**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER ARMSTRONG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL PROPERTIES TRUST, INC., EDWARD K. ALDAG, JR., R. STEVEN HAMNER, and J. KEVIN HANNA,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Armstrong ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Medical Properties Trust, Inc. ("MPW" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired MPW securities between

May 23, 2023 and August 17, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      MPW is a self-advised real estate investment trust ("REIT") that was formed to acquire and develop net-leased healthcare facilities.  MPW's financing model purportedly facilitates acquisitions and recapitalizations and allows operators of hospitals to unlock the value of their real estate assets to fund facility improvements, technology upgrades, and other investments in operations.

3.      On May 23, 2023, MPW issued a press release announcing that it had entered into a recapitalization transaction (the "Recap Transaction") with Prospect Medical Holdings, Inc. ("Prospect"), a health care management services organization.  Pursuant to the Recap Transaction, in relevant part, MPW would take an equity stake in Prospect's managed care business, PHP Holdings, LLC ("PHP"), in lieu of a cash payment of outstanding loans and accrued but unpaid rent and interest owed by Prospect to MPW.

4.      As a result of PHP's involvement in the deal, the Recap Transaction was subject to regulatory approval by the Department of Managed Health Care of the Health and Human Services Agency of the State of California ("DMHC"), the regulatory body responsible for governing managed health care plans in California.  On July 20, 2023, the DMHC issued an order (the "DMHC Order") putting the Recap Transaction on hold in order to obtain further information from the Company.  Despite the foregoing, MPW elected not to disclose the DMHC Order to MPW shareholders when the Company reported its Q2 2023 results on August 8, 2023 or in its quarterly

report filed with the SEC on August 9, 2023.  Instead, MPW continued to tout the benefits of the Recap Transaction by stating that the deal had boosted the Company's revenue.

5.        The truth regarding the Recap Transaction's approval status was revealed on August 18, 2023 when the *Wall Street Journal* ("*WSJ*") published an article entitled "Cracks Deepen for America's Biggest Hospital Landlord: Struggling Tenants, a Bailout on Hold" (the "*WSJ* Article").  The *WSJ*, which had obtained a copy of the DMHC Order and other documents from the DMHC under California's Public Records Act, discussed the DMHC's decision to halt the Recap Transaction and the negative impact MPW and Prospect could each experience if the deal is permanently rejected.

6.        That same day, MPW issued a press release responding to the *WSJ* Article, in which the Company downplayed the DMHC Order as a "standard, expected, and non-controversial part of the approval process for [the Recap Transaction]" and attempted to excuse the Company's non-disclosure of the DMHC Order to shareholders by stating that the "DMHC's request was deemed immaterial to [MPW's] financials and thus did not require disclosure."

7.        Despite MPW's attempts to reassure investors, following publication of the *WSJ* Article, MPW's stock price fell $0.57 per share, or 7.6%, to close at $6.93 per share on August 18, 2023.

8.        Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Recap Transaction was subject to regulatory approval and had in fact been placed on hold by the DMHC; (ii) accordingly, MPW had misrepresented the regulatory process for the Recap Transaction's approval; (iii) as a result of the foregoing, MPW overstated the approval prospects and benefits of

the Recap Transaction; and (iv) as a result, the Company's public statements regarding the Recap Transaction were materially false and misleading at all relevant times.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to MPW's most recently filed quarterly report with the SEC, as of August 4, 2023, there were 598.4 million shares of MPW's common stock outstanding.  MPW's securities trade on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands of investors in MPW securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

13.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired MPW securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant MPW is a Maryland corporation with principal executive offices located at 1000 Urban Center Drive, Suite 501, Birmingham, Alabama 35242.  MPW's common stock trades in an efficient market on the NYSE under the ticker symbol "MPW".

16.     Defendant Edward K. Aldag, Jr. ("Aldag") has served as MPW's Chairman, President, and Chief Executive Officer at all relevant times.

17.     Defendant R. Steven Hamner ("Hamner") has served as MPW's Executive Vice President and Chief Financial Officer at all relevant times.

18.     Defendant J. Kevin Hanna ("Hanna") has served as MPW's Vice President, Controller, Assistant Treasurer, and Chief Accounting Officer at all relevant times.

19.     Defendants Aldag, Hamner, and Hanna are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of MPW's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of MPW's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with MPW, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and

misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

21.     MPW and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.     MPW is a self-advised REIT that was formed to acquire and develop net-leased healthcare facilities.  MPW's financing model purportedly facilitates acquisitions and recapitalizations and allows operators of hospitals to unlock the value of their real estate assets to fund facility improvements, technology upgrades, and other investments in operations.

### Materially False and Misleading Statements Issued During the Class Period

23.     The Class Period began on May 23, 2023, when MPW issued a press release announcing the Recap Transaction.  The press release stated, in relevant part:

> [MPW] today announced that affiliates of [Prospect] have completed $375 million in new financings from third-party lenders, the proceeds of which will be used to provide Prospect's hospital operations with liquidity and capitalize its managed care business for continued growth and value creation in a vibrant market for such businesses.
>
> Prospect's $250 million asset-backed revolving credit facility has been repaid in full and as a result, the unencumbered borrowing base of government and commercial insurance accounts receivable will provide first lien security for the previously announced MPW delayed draw term loan of up to $75 million. Prospect is expected to be substantially free of material debt or lease obligations outside of those to MPW and this new third-party financing.
>
> MPW continues to have strong conviction in the embedded value of the Prospect platform and has structured its master leases and security agreements to provide collateral value in addition to its real estate interests, including interests in the equity of Prospect's managed care business. As of the end of the first quarter of 2023, MPW holds $1.6 billion in total assets related to Prospect that are expected to be reconstituted as follows:

- An approximately $513 million investment in six leased California hospitals, subject to a master lease scheduled to resume partial rent payments in September and full rent payments at an 8.44% cash yield in March of 2024;

- A $457 million investment in MPW's Connecticut real estate which, as previously announced, Yale New Haven Health is expected to acquire in a transaction that is expected to close during 2023's third quarter. MPW's investment is expected to be fully recovered through cash proceeds of $355 million at closing and equity interests in Prospect's managed care business valued at $103 million;

- A first lien mortgage loan of $150 million and equity interests in the managed care business valued at $100 million, resulting from the transfer to Prospect of Pennsylvania real estate with a book value of $250 million;

- Loans aggregating approximately $264 million and accrued rent and interest of approximately $56 million, along with the previously announced $50 million convertible loan to the managed care entities are expected to be recovered through equity interests in the managed care business.

The new loan agreements among Prospect, [MPW] and third-party lenders have terms of approximately three years. During this period, Prospect intends to further build the value of its managed care business and continue operational and financial improvements of its hospital operating business.

24.     On July 20, 2023, the DMHC issued the DMHC Order putting the Recap Transaction on hold in order to obtain further information from the Company.

25.     Despite the DMHC Order being issued less than three weeks prior, MPW failed to disclose that the Recap Transaction had been put on hold when it issued a press release reporting the Company's Q2 2023 financial and operating results on August 8, 2023.  Rather, the press release stated, in relevant part:

NFFO for the second quarter ended June 30, 2023 was $285 million ($0.48 per diluted share) compared to $275 million ($0.46 per diluted share) in the year earlier period. Included in 2023 second quarter NFFO *is roughly $68 million ($0.11 per diluted share) from the receipt of equity in PHP in lieu of cash for 2023 previously unrecorded but contractually owed rent and interest revenue from Prospect Medical Holdings, Inc. ("Prospect"). In accordance with accounting*

***requirements, the value of MPW's investment in PHP was established at roughly
$655 million based on estimates from multiple independent third parties and the
application of an appropriate marketability discount***.

The Company is narrowing its 2023 calendar estimate of per share net income to
$0.33 to $0.37 to account for second quarter results and is also narrowing its
estimate of per share NFFO to $1.53 to $1.57. The ranges include Prospect-related
income from the expected resumption of partial California rental payments,
recognition of the PHP equity value received in the second quarter and other
amounts. The estimates are based on an existing portfolio which includes the impact
of binding disposition and leasing transactions and excludes expected future
contributions from development and other capital projects.

(Emphasis added.)

26.     That same day, MPW hosted an earnings call with investors and analysts to discuss

the Company's Q2 2023 results (the "Q2 2023 Earnings Call").   In discussing the Recap

Transaction during the scripted portion of the Q2 2023 Earnings Call, Defendant Hamner stated

only, in relevant part:

[. . .] we recognized about $68 million in Prospect rent and interest. This is based
on the previously disclosed Prospect recapitalization transactions that included our
exchange of certain real estate and other assets for interest in Prospects managed
care business.

In brief summary, you will recall our May 23rd announcement that as of the end of
the first quarter, we carried these assets at approximately $573 million. After
obtaining updated valuations and an appraisal to determine marketability discounts,
the estimated value of our interest in managed care as of the May closing was
approximately $655 million. That's in addition to our roughly $515 million of
leased California hospitals and $355 million of cash that we expect to collect from
the sale to Yale of our Connecticut hospitals. Accordingly, we recognized in the
second quarter the rent and interest that would have been collected in 2023 through
the May closing date.

27.     On August 9, 2023, MPW once again failed to disclose that the Recap Transaction

had been put on hold when it filed a Quarterly Report on Form 10-Q with the SEC, reporting the

Company's financial and operating results for the quarter ended June 30, 2023 (the "Q2 2023 10-

Q"). Rather, in discussing the Company's new investments, the Q2 2023 10-Q simply stated, in

relevant part:

> On May 23, 2023, Prospect completed its recapitalization plan, which included receiving $375 million in new financing from several lenders. Along with this new debt capital from third-party lenders, we agreed to the following restructuring of our $1.7 billion investment in Prospect including: a) maintaining the master lease covering six California hospitals with no changes in rental rates or escalator provisions, and with the expectation that Prospect will begin making cash payments for a substantial portion of the contractual monthly rent due on these California properties starting in September 2023, b) transition the Pennsylvania properties back to Prospect in return for a first lien mortgage on the facilities, c) provide up to $75 million in a loan secured by a first lien on Prospect's accounts receivable and certain other assets, of which we funded $25 million on May 23, 2023, d) complete the previously disclosed sale of the Connecticut properties to Yale New Haven ("Yale"), as more fully described in Note 9 to the condensed consolidated financial statements, and e) obtain a non-controlling ownership interest in PHP Holdings of approximately $654 million, after applying a discount for lack of marketability, consisting of an approximate $68 million equity investment and $586 million loan convertible into equity of PHP Holdings (collectively, the "Prospect Transaction"). This non-controlling ownership interest was received in exchange for unpaid rent and interest through December 2022, previously unrecorded rent and interest revenue in 2023 totaling approximately $68 million, our $151 million mortgage loan on a California property, our $112.9 million term loan, and other obligations at the time of such investment.

> At June 30, 2023, we believe our remaining investment in the Prospect real estate and other assets are fully recoverable, but no assurances can be given that we will not have any further impairments in future periods.

28.     Appended to the Q2 2023 10-Q as an exhibit were signed certifications pursuant to

the Sarbanes-Oxley Act of 2002 by Defendants Aldag and Hamner, attesting that "[t]he

information contained in the [Q2 2023 10-Q] fairly presents, in all material respects, the financial

condition and results of operations of the Company."

29.     The statements referenced in ¶¶ 23 and 25-28 were materially false and misleading

because Defendants failed to disclose that: (i) the Recap Transaction was subject to regulatory

approval and had in fact been placed on hold by the DMHC; (ii) accordingly, MPW had

misrepresented the regulatory process for the Recap Transaction's approval; (iii) as a result of the

foregoing, MPW overstated the approval prospects and benefits of the Recap Transaction; and (iv) as a result, the Company's public statements regarding the Recap Transaction were materially false and misleading at all relevant times.

### The Truth Emerges

30.     On August 18, 2023, the *Wall Street Journal* published an article entitled "Cracks Deepen for America's Biggest Hospital Landlord: Struggling Tenants, a Bailout on Hold", reporting, in relevant part:

> The nation's largest hospital landlord said an unusual transaction that provided crucial financial support for one of its biggest tenants was a done deal. It wasn't.
>
> The deal was good news for both companies, and for communities across the country concerned that their local hospitals could go broke. The landlord, [MPW], announced the transaction in May. When it reported quarterly results on Aug. 8, it said the arrangement boosted its own revenue.
>
> But a California state regulator on July 20 ordered that the transaction between [MPW] and Prospect [] be put on hold, according to the order that the regulator sent to Prospect. [MPW] didn't disclose the regulator's order when it reported second-quarter results, or in its quarterly report filed the next day with the [SEC].
>
> An [MPW] spokesman, Drew Babin, said: "Information is being provided to the relevant agencies, and [MPW] continues to expect to complete the transactions."
>
> ***
>
> The Prospect deal was designed to alleviate financial stress for both it and [MPW]. Before the deal, Prospect had stopped paying rent, closed two hospitals near Philadelphia, and owed [MPW] hundreds of millions of dollars. [MPW's] own finances are under scrutiny by investors, its shares are down by half over the past year, and it has already suffered large losses on Prospect, its third-largest tenant. If the deal is killed by regulators, it would further pressure the two companies' finances.
>
> ***
>
> [MPW] announced the deal with Los Angeles-based Prospect on May 23, saying it would receive equity in Prospect's managed-care business—[PHP]—in lieu of cash payment for $573 million of loans, unpaid rent and interest, and other amounts

owed. [PHP] owns a small health insurer, Prospect Health Plan, as well as other businesses.

[MPW] didn't disclose whether the transaction with closely held Prospect would require regulatory approval. Last week [MPW] said it owned 49% of [PHP].

It isn't clear how Prospect would pay [MPW] if the regulator, the [DMHC], rejected the deal permanently. The department oversees Prospect Health Plan.

Kevin Durawa, a department spokesman, said the regulator is reviewing the matter and doesn't have a statutory time frame for making a decision. "The department's review includes the plan's decision to move forward with this transaction before the department's approval," he said.

The [*WSJ*] obtained the [DMHC Order] and other documents from the California regulator through requests under the state's Public Records Act.

Prospect said it was "in no position right now" to answer questions about the [DMHC Order]. The company has been crippled by a ransomware attack that was announced Aug. 3 and took out all of its computer systems, causing emergency-room closures and forcing hospital staff to use paper records. Prospect said that emergency departments have reopened but that it doesn't know when all of its systems will be restored.

Babin, the [MPW] spokesman, said the deal is "proceeding through a normal regulatory review process that was expected and is not controversial." He said the company expects the deal to be approved.

*** 

Now, with interest rates higher and money tighter, [MPW] is shrinking. [MPW] has been extending financial support to some of its most-troubled tenants, including Prospect and Steward Health Care. Steward, a for-profit hospital operator based in Dallas, accounted for $3.7 billion, or 19%, of [MPW's] assets as of June 30 and is [MPW's] largest tenant. Prospect and [PHP] together accounted for $1.7 billion, or 9%, of [MPW's] assets.

[MPW] shares fell sharply last week after the company said it lent $140 million to Steward during the current quarter—part of a larger credit package that included other lenders. [MPW] already had more than $500 million of other loans to Steward, which is closely held, plus a $126 million equity investment. On Thursday, [MPW] said it had sold $105 million of the new loan to an unnamed investment firm.

***

[MPW's] shares trade at 54% of book value. [MPW] has been borrowing to help pay its dividend, which exceeded operating cash flow in each of the past two quarters. The stock has a 15.5% dividend yield, reflecting concern that the payout might not be sustainable.

[MPW] and Prospect have provided different descriptions, at different points in time, of the details of their deal. The California regulator appears to be concerned about how much control [MPW] would have over Prospect Health Plan. The deal is unusual in part because [MPW], a REIT, would get a big stake in a health insurer.

When the deal was announced, [MPW] didn't say what its percentage ownership of [PHP] would be. Prospect Health Plan has about 73,000 managed-care enrollees in five Southern California counties. [PHP's] other businesses include physician-practice groups.

Prospect Health Plan notified the California regulator of the [Recap Transaction] in a June 23 filing that said an [MPW] subsidiary had "acquired a 49% equity interest" in [PHP], the health plan's parent, on May 23. The health plan said [MPW] acquired its stake by converting $370 million of loans, unpaid rent and interest, and other amounts owed by Prospect Medical Holdings into equity in [PHP]. The health plan called [MPW] a passive investor. It said the deal wasn't a change of control and didn't need the regulator's advance approval.

"The equity interests acquired by [MPW] are not 'voting' interests, although [MPW] was granted blocking rights with respect to certain major decisions" of [PHP], the health plan said. The June 23 filing didn't provide details about the blocking rights.

The [DMHC] on July 20 issued the [DMHC Order] putting the deal on hold. It characterized the deal's terms as "proposing a change of control." The [DMHC] said the order would "remain in effect until revoked or superseded by further order of the director." In an accompanying letter, the regulator said the order "prohibits the plan from implementing the terms" until further notice, because the health plan's proposal "does not demonstrate compliance" with state law.

The [DMHC] also sent the health plan a 12-page list of comments and requests for information. It asked for "a thorough description of the blocking rights," and an explanation of "the circumstances when [MPW] may exercise those blocking rights." The health plan's responses are due Sept. 13, after the regulator granted a deadline extension.

Asked to describe the blocking rights, Babin, the [MPW] spokesman, said "these are standard in any partnership agreement where a significant equity ownership interest exists and the specifics are confidential."

When [MPW] reported second-quarter results last week, its description of the equity deal differed significantly from its previous explanation in May—and from what Prospect Health Plan told the [DMHC] in June.

When [MPW] last week said it had taken a 49% equity interest in [PHP], that percentage figure matched what the health plan had said. [MPW], however, said its "non-controlling ownership interest" was worth $654.5 million as of June 30—based on updated valuations—and consisted of "an approximate $68 million equity investment and $586 million loan convertible into equity of [PHP]." The valuation exceeded the $370 million of Prospect obligations that the health plan in its June 23 filing had said was converted into equity.

The Prospect deal helped [MPW's] income statement, too. [MPW] said it recorded its receipt of the $68 million equity investment as revenue; that was 20% of its second-quarter revenue. Asked what [MPW's] rationale was for recognizing revenue in light of the [DMHC Order], Babin said "this is governed by accounting regulations."

As a regulated insurer, Prospect Health Plan files financial reports publicly. Other businesses owned by [PHP] don't, making it difficult for outsiders to gauge the unit's value. For the fiscal year ended Sept. 30, 2022, Prospect Health Plan reported net income of $1.9 million, total assets of $30.7 million and total equity of $14.2 million.

31.     That same day, MPW issued a press release responding to the *WSJ* Article, in which the Company downplayed the DMHC Order as a "standard, expected, and non-controversial part of the approval process for [the Recap Transaction]" and attempted to excuse the Company's non-disclosure of the DMHC Order to shareholders by stating that the "DMHC's request was deemed immaterial to [MPW's] financials and thus did not require disclosure."

32.     Despite MPW's attempts to reassure investors, following publication of the *WSJ* Article, MPW's stock price fell $0.57 per share, or 7.6%, to close at $6.93 per share on August 18, 2023.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired MPW securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, MPW securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MPW or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of MPW;

- whether the Individual Defendants caused MPW to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of MPW securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- MPW securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold MPW securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

43. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

16

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of MPW securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire MPW securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for MPW securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about MPW's finances and business prospects.

47.     By virtue of their positions at MPW, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of MPW, the Individual Defendants had knowledge of the details of MPW's internal affairs.

49.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of MPW.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to MPW's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of MPW securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning MPW's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired MPW securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

50.     During the Class Period, MPW securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of MPW securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were

paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of MPW securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of MPW securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

53.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of MPW, and conducted and participated, directly and indirectly, in the conduct of MPW's business affairs.  Because of their senior positions, they knew the adverse non-public information about MPW's misstatement of income and expenses and false financial statements.

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to MPW's

financial condition and results of operations, and to correct promptly any public statements issued by MPW which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which MPW disseminated in the marketplace during the Class Period concerning MPW's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause MPW to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of MPW within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MPW securities.

57.     Each of the Individual Defendants, therefore, acted as a controlling person of MPW. By reason of their senior management positions and/or being directors of MPW, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, MPW to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of MPW and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by MPW.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 29, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

WOHL & FRUCHTER LLP
Joshua E. Fruchter
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Attorneys for Plaintiff and the Proposed Class*