UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
:
CHRISTOPHER ARMSTRONG, *individually* :
*and on behalf of all others similarly situated,* :
:
Plaintiff,   :   23-CV-8597 (VSB)
:
- against -   :   **OPINION & ORDER**
:
MEDICAL PROPERTIES TRUST, INC.,   :
EDWARD K. ALDAG, JR., R. STEVEN   :
HAMNER, and J. KEVIN HANNA,   :
:
Defendants.   :
:
-------------------------------------------------------X

Appearances:

Joseph Alexander Hood, II
Thomas Henry Przybylowski
Jeremy Alan Lieberman
Pomerantz LLP
New York, NY
*Counsel for Plaintiff*

Joshua E. Fruchter
Wohl & Fruchter LLP
Monsey, NY
*Counsel for Plaintiff*

Jeremy Alan Lieberman
Jonathan David Park
Pomerantz LLP
New York, NY
*Counsel for Movant*

Nathaniel Desmons Cullerton
Sarah Kathleen Eddy
William D Savitt
Adabelle Ekechukwu
Wachtell, Lipton, Rosen & Katz
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Christopher Armstrong brings this securities fraud class action lawsuit against Medical Properties Trust, Inc. ("MPW") and certain of its officers and directors. Plaintiff alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well the corresponding rule of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 ("Rule 10b-5"). (Compl. ¶ 10.)[1]

Before me is an unopposed motion file by Movant John Cuomo pursuant to Section 21D(a)(3) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Cuomo seeks (1) to be appointed lead plaintiff, and (2) approval of Pomerantz LLP as lead counsel. Because Cuomo has a large financial interest in the litigation and fulfills the threshold adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure, Cuomo's motion to be appointed lead plaintiff and for approval of his selection of Pomerantz LLP as lead counsel is GRANTED.

**I.    Factual and Procedural History**[2]

    **A.    *The Complaint***

On September 29, 2023, Plaintiff Christopher Armstrong ("Armstrong") filed this putative class action complaint against MPW, as well as its Chairman, President, and Chief Executive Officer Edward K. Aldag, Jr; its Executive Vice President and Chief Financial Officer R. Steven Hamner; and its Vice President, Controller, Assistant Treasurer, and Chief Accounting Officer J. Kevin Hanna (collectively, the "Individual Defendants"), alleging that MPW and Individual Defendants (collectively, "Defendants") violated Sections 10(b) and 20(a) of the

---

[1] "Compl." refers to Plaintiff Christopher Armstrong's complaint filed August 29, 2023. (Doc. 1.)

[2] The facts in this Section are recited for background only and are not intended to and should not be viewed as findings of fact.

Exchange Act and Rule 10b-5 by misleading investors about MPW's recapitalization transaction (the "Recap Transaction") with Prospect Medical Holdings, Inc., a healthcare management services organization. (*See* Compl.) Essentially, the Complaint alleges that MPW did not disclose that a California regulatory agency had to approve the Recap Transaction, and then "downplayed" the impact of the regulator's order putting the transaction on hold. (*Id.* ¶¶ 30–31.) The company's share prices fell after the Wall Street Journal reported that the Recap Transaction was not a "done deal" because of the regulator's order. (*Id.* ¶ 30.)

The same day that Armstrong filed his complaint, Pomerantz LLP published a notice of the Complaint on *PR Newswire* in accordance with the PSLRA, 15 U.S.C. § 78u–4(a)(3)(A)(i). (*See* Doc. 18-2. at 1–5.)³ The notice advised putative class members that they had 60 days from the date of the notice to move the Court to be appointed lead plaintiff of the litigation. (*See id.* at 1.)

### B. *Lead Plaintiff Motion*

On November 28, 2023, Cuomo filed a motion requesting that he be appointed as lead plaintiff, and for approval of Pomerantz LLP as lead counsel. (Doc. 15.) No competing motions to Cuomo's Lead Plaintiff Motion were filed on or before November 28, 2023, or at any time thereafter. Defendants have not opposed the motion. (Doc. 19.)

## II. Discussion

### A. *Appointment of Lead Plaintiff*

#### 1. Applicable Law

The procedures set forth in the PSLRA govern the appointment of lead plaintiff in securities class actions. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 131 n.2 (2d

---

³ Pomerantz published a corrected notice of the Complaint on *Globe Newswire* on October 3, 2023, because the earlier published notice on *PR Newswire* did not include the class period. (*See* Doc. 18-2 at 6–10.)

Cir. 2008). The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar Holding Co.*, No. 11-CV-7133, 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (internal quotation marks omitted); *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998). Before the enactment of the PSLRA, "professional plaintiffs" overwhelmingly and disproportionately profited, "irrespective of the culpability of the defendants" and "at the expense of shareholders with larger stakes." *Schulman v. Lumenis, Ltd.*, No. 02-CV-1989, 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 103 (D.N.J. 1999)). Consistent with this intent, under the PSLRA, courts are to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i).

The Act provides that I "shall adopt a presumption" that the "most adequate plaintiff" is the "person or group of persons" who (a) have satisfied notice and filing requirements, (b) have "the largest financial interest in the relief sought by the class," and (c) "otherwise satisf[y] the requirements of Rule 23." *Id.* § 78u–4(a)(3)(B)(iii). I explain these requirements in turn.

a. Notice and Filing Requirements

The PSLRA requires that the plaintiff in the first-filed action publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service" within twenty days from the date that the complaint is filed. *Id.* § 77z-1(a)(3)(A)(i)–(ii). The notice must inform the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as

4

lead plaintiff." *Id*. "[T]he Court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff . . . to come forward and take control of the litigation." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 577 (D.N.J. 2001); *see also Somogyi v. Organogenesis Holdings Inc.*, No. 21-CV-6845, 2022 WL 3654646, at *3 (E.D.N.Y. Aug. 25, 2022).

Courts strictly adhere to the sixty-day rule, and any motion filed after the sixty-day period will not be considered except under rare circumstances. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (calling the sixty-day deadline a "strict deadline"); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014) ("Courts within and outside of this District typically adhere strictly to the requirement that movants file their lead plaintiff motions within sixty days of the date when notice is published.").

      b. <u>Largest Financial Interest</u>

        i. *Aggregating Financial Interest*

Although the PSLRA permits a "person or group of persons" to be appointed as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(b)(iii)(I), it does not define "group of persons" or whether these persons must be related. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("The PSLRA does not, unfortunately, define what constitutes an appropriate candidate. . . . [T]he Act does not specify whether the 'members' must be related in some fashion in order to qualify as an appropriate lead plaintiff group."). Courts permit unrelated investors to move for appointment as lead plaintiff, and aggregate their financial interests, on a case-by-case basis. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *eSpeed,* 232 F.R.D. at 99. Groups with unrelated members must, however, provide evidence that they will function cohesively and thus best serve the class. *See Varghese*,

5

589 F. Supp. 2d at 392; *see also In re Tarragon Corp. Sec. Litig.*, No. 07-CV-7972, 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) ("[T]o enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers."). Courts have considered factors such as "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese*, 589 F. Supp. 2d at 392. Courts will reject a group of unrelated investors if the group "has not provided sufficient evidence that it will function cohesively, and has only provided 'conclusory assurances' that call into question whether it can manage th[e] litigation effectively." *Micholle v. Ophthotech Corp.*, No. 17-CV-1758, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (quoting *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191–92 (S.D.N.Y. 2011)). Where a court rejects a group of unrelated investors, it may consider the largest shareholder within the group for appointment as lead plaintiff. *Varghese*, 589 F. Supp. 2d at 394 ("While the Court rejects the aggregated [plaintiff group's] motion as lead plaintiffs, the Court may consider . . . the largest shareholder . . . individually, as if he had moved to be appointed as lead plaintiff alone.").

                ii.   *Calculating Financial Interest*

When determining the party with the largest financial interest, courts in this District consider (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate financial losses suffered. *See Varghese*, 589 F. Supp. 2d at 394–95 (collecting cases). Of the four factors, financial loss is the most significant. *See Reitan*, 68 F. Supp. 3d at 395; *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617, 2006 WL 197036, at *2

(S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of the *Lax*-style elements." (internal quotation marks and alterations omitted)).

Courts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff.  *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 WL 680779, at *5 & n.6 (S.D.N.Y. Mar. 2, 2007).  In securities fraud cases, courts must consider only those losses that a plaintiff incurred after a misrepresentation is revealed to the public.  *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617–18 (S.D.N.Y. 2015); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 272 (S.D.N.Y. 2015); *see also Comverse*, 2007 WL 680779, at *5 ("[W]here (as here) it is clear from the face of the pleadings that most of [the movant's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage.").  Any losses incurred based on "in-and-out" trades—where an investor buys stock and sells it during the class period but before any disclosures—should not be considered.  *See Topping*, 95 F. Supp. 3d at 618 ("[W]hen calculating movants' financial interests on a lead plaintiff motion, courts should not include 'losses resulting from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public.'" (alterations omitted) (quoting *Comverse*, 2007 WL 680779, at *4)).  This is consistent with the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, where the Court found that securities actions only provide recoveries for "economic losses that misrepresentations actually cause."  544 U.S. 336, 345 (2005).  Thus, any losses resulting from sales of shares before a company's misconduct is revealed are not considered for the purpose of loss calculation "because those losses cannot be proximately linked to the misconduct at issue." *Alibaba*, 102 F. Supp. 3d at 531 (quoting *Comverse*, 2007 WL 680779, at *4).

c.  <u>Rule 23</u>

The last requirement is that the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of class certification." *eSpeed*, 232 F.R.D. at 102.  The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements.  *See Varghese*, 589 F. Supp. 2d at 397; *eSpeed*, 232 F.R.D. at 102.

With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00-CV-6766, 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)); *see also Oxford Health Plans*, 182 F.R.D. at 50.  While the claim need not be identical, it must be substantially similar to the other members' claims.  *See Canson v. WebMD Health Corp.*, No. 11-CV-5382, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011).

The adequacy requirement is satisfied where the proposed lead plaintiff "fairly and adequately protect[s] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In evaluating adequacy, courts have assessed factors such as: (1) the size, available resources and experience of the proposed lead plaintiff, (2) the qualifications of the proposed class counsel; and (3) any

potential conflicts or antagonisms rising among purported class members." *Blackmoss Invs., Inc. v. ACA Cap. Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (internal quotation marks omitted); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) ("While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class.").

### 2. Application

#### a. Notice and Filing

The notice and filing in this case satisfy the PSLRA requirements. (*See* Doc. 18-2.) It was timely made, having been published on the same day of the filing of the complaint and corrected four days later. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). It informs investors of the pendency of the lawsuit—including its case caption, the class period, and the fact that investors "have until November 28, 2023 to ask the Court to appoint [them] as Lead Plaintiff for the class." (Doc. 18-2 at 1, 7.) *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Cuomo timely filed for appointment as lead plaintiff on November 28, 2023, (Doc. 15), and no competing motion seeking appointment as lead plaintiff has been filed, (Doc. 19). *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

#### b. Largest Financial Interest

Cuomo claims to have the largest financial interest in the action, (Cuomo Mem. 6–7),[4] and claims a financial loss of $182,229 in connection with his Class Period transactions in MPW securities. (*Id.* at 7.) Given that no other investors have moved for appointment as lead plaintiff,

---

[4] "Cuomo Mem." refers to the Memorandum of Law in Support of John Cuomo's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel. (Doc. 17.)

and no party has raised an objection to Cuomo's claims, I find that Cuomo has satisfied this requirement. *See Moore v. Checkpoint Therapeutics, Inc.*, No. 24-cv-2613, 2024 WL 3090623, at *2 (S.D.N.Y. June 21, 2024) ("[A]ssum[ing]" that investor with unopposed motion to serve as lead plaintiff had a "financial interest render[ing] him suitable to serve as lead plaintiff," and collecting similar cases).

c. Otherwise Satisfying Rule 23

Cuomo satisfies the adequacy and typicality requirements of Rule 23. Because Cuomo purchased MPW common stock between May 23, 2023, and August 17, 2023, he has claims "aris[ing] from the same conduct from which the other class members' claims and injuries arise." *Initial Pub. Offering*, 214 F.R.D. at 121 (internal quotation marks omitted). Given his significant financial losses and his approximately five years' investing experience, I find that Cuomo will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Pirelli*, 229 F.R.D. at 417. No other movant has provided any proof that Cuomo as an individual would not be able to "fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, I find that Cuomo should serve as lead plaintiff.

B.   *Appointment of Lead Counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (internal quotation marks omitted omitted).

Cuomo has selected Pomerantz LLP. I have reviewed Cuomo's filings in this case, as well as Pomerantz's firm resume, (Doc. 18-5), and I find that Pomerantz is highly experienced in

securities litigation and is capable of adequately and effectively representing the class. Cuomo's motion that Pomerantz LLP be appointed lead counsel of this action is GRANTED.

### III. Conclusion

I find that Cuomo is the presumptive lead plaintiff and no other movant has rebutted that presumption. Moreover, Cuomo has a substantial financial interest in the action, and meets the typicality and adequacy requirements of Rule 23. Therefore, Cuomo's motion for appointment as lead plaintiff and for approval of lead counsel is GRANTED.

The Clerk of Court is respectfully requested to terminate the pending motion at Doc. 15. Within seven days of this Order, the parties shall file a proposed schedule for any answer or motion in response.

SO ORDERED.

Dated: August 13, 2024
      New York, New York

                                                      _____
                                                      Vernon S. Broderick
                                                      United States District Judge