UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | Case No. 1:23-cv-008597-VSB |
|---|---|
| IN RE MEDICAL PROPERTIES TRUST, INC. SECURITIES LITIGATION | <u>CLASS ACTION</u> |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT .................................................................................1

I.     PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR
       OMISSION ....................................................................................................1

       A.     Plaintiffs abandon reliance on the May 23 statements...........................2

       B.     Plaintiffs fail to adequately allege that MPT's August 2023 statements
              were materially misleading. ..................................................................2

       C.     Plaintiffs fail to plead any GAAP violation............................................5

II.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ..................7

       A.     Plaintiffs fail to adequately allege any motive to commit fraud..............7

       B.     Plaintiffs fail to allege strong circumstantial evidence of fraud. ............9

III.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ...................................................11

CONCLUSION........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito* v. *IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ................................................................................. 2, 3, 4, 7

*Arkansas Pub. Emps. Ret. Sys.* v. *Bristol-Myers Squibb Co.*,
  28 F.4th 343 (2d Cir. 2022) ....................................................................................... 9

*Cent. States, Se. & Sw. Areas Pension Fund* v. *Fed. Home Loan Mortgage Corp.*,
  543 F. App'x 72 (2d Cir. 2013) ................................................................................. 11

*Das* v. *Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018) .................................................................. 9, 11

*ECA* v. *JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ........................................................................ 4, 5, 7, 9, 10

*Fasano* v. *Li*,
  2023 WL 6292579 (S.D.N.Y. Sept. 27, 2023) ........................................................... 3

*Fila* v. *Pingtan Marine Enter. Ltd.*,
  195 F. Supp. 3d 489 (S.D.N.Y. 2016) ..................................................................... 11

*Fla. State Bd. of Admin.* v. *Green Tree Fin. Corp.*,
  270 F.3d 645 (8th Cir. 2001) ..................................................................................... 8

*Gauquie* v. *Albany Molec. Rsch., Inc.*,
  2016 WL 4007591 (E.D.N.Y. July 26, 2016) ........................................................... 10

*Hutchison* v. *Deutsche Bank Sec., Inc.*,
  647 F.3d 479 (2d Cir. 2011) ....................................................................................... 5

*IBEW* v. *Royal Bank of Scotland Grp.*,
  783 F.3d 383 (2d Cir. 2015) ....................................................................................... 4

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
  2018 WL 2382600 (S.D.N.Y. May 24, 2018) ........................................................... 10

*In re Citigroup Sec. Litig.*,
  2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ........................................................... 9

*In re Express Scripts Holding Co. Sec. Litig.*,
  2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ............................................................. 3

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ............................................................. 3

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ....................................................................... 8

*In re JP Morgan Chase Sec. Litig.*,
  2007 WL 950132 (S.D.N.Y. Mar. 29, 2007) ........................................................... 10

*In re Lottery.com, Inc. Sec. Litig.*,
    2025 WL 605485 (S.D.N.Y. Feb. 25, 2025) ........................................................ 10

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
    988 F. Supp. 2d 406 (S.D.N.Y. 2013) ............................................................... 5

*In re Omnicom Grp., Inc. Sec. Litig.*,
    541 F. Supp. 2d 546 (S.D.N.Y. 2008) .............................................................. 11

*In re Open Joint Stock Co. Vimpel-Commc'ns, Sec. Litig.*,
    2006 WL 647981 (S.D.N.Y. Mar. 14, 2006) ....................................................... 2

*In re Skechers USA, Inc. Sec. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020) ............................................................... 8

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .................................................... 10

*Janbay* v. *Canadian Solar, Inc.*,
    2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ..................................................... 11

*Lighthouse Fin. Grp.* v. *Royal Bank of Scotland Grp., PLC*,
    2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013) ...................................................... 10

*Lipow* v. *Net1 UEPS Technologies, Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015) ............................................................... 8

*Omnicare, Inc.* v. *Laborers Dist. Council of Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ..................................................................................... 6

*New England Carpenters Guaranteed Annuity & Pension Funds* v. *DeCarlo*,
    122 F.4th 28 (2d Cir. 2023) ........................................................................... 6

*Reilly* v. *U.S. Physical Therapy, Inc.*,
    2018 WL 3559089 (S.D.N.Y. July 23, 2018) ..................................................... 8

*Sachsenberg* v. *IRSA Inversiones y Representaciones Sociedad Anonima*,
    339 F. Supp. 3d 169 (S.D.N.Y. 2018) ............................................................... 2

*San Antonio Fire & Police Pension Fund* v. *Dentsply Sirona Inc.*,
    732 F. Supp. 3d 300 (S.D.N.Y. 2024) ........................................................ 8, 10

*Sjunde AP-Fonden* v. *Goldman Sachs Grp.*,
    545 F. Supp. 3d 120 (S.D.N.Y. 2021) ............................................................. 10

*Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .................................................................................... 11

*Vill. Green At Sayville, LLC* v. *Town of Islip*,
    43 F.4th 287 (2d Cir. 2022) ........................................................................... 3

*Woolgar* v. *Kingstone Cos., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) ............................................................. 10

**Statutes & Rules**

California Health & Safety Code § 1399.65(a)(1) .......................................................... 3

Fed. R. Civ. P. 9(b) ......................................................................................................... 9

Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. 104-67 ............................... 9

SEC Staff Acct. Bull. No. 101 (Dec. 3, 1999) ......................................................... 5, 6

## PRELIMINARY STATEMENT

Plaintiffs' central premise is that Defendants committed securities fraud by failing to disclose that a completed $75 million deal—part of a restructuring transaction involving $1.6 billion in assets—was being reviewed by a California state health care agency (the "DMHC"). That review was completed before Plaintiffs amended their complaint, resulted in no adverse findings, and had no impact on the transaction, much less on MPT's earnings. Plaintiffs' opposition does not dispute any of this. The DMHC's review was immaterial as a matter of law, and the FAC should be dismissed for that reason alone.[1]

Plaintiffs also fail to plead a "strong inference" that any Defendant intentionally sought to mislead investors. No Defendants sold any of their significant stock holdings during the class period, MPT received clean audit opinions at all relevant times, and never issued an accounting correction or restated its financials. The FAC is devoid of allegations suggesting that anyone at MPT did anything other than act in good faith.

## I.    PLAINTIFFS FAIL TO PLEAD AN ACTIONABLE MISSTATEMENT OR OMISSION

On May 23, 2023, MPT and Prospect announced an agreement to restructure MPT's $1.6 billion in Prospect-related assets. Br. 5. MPT received economic interests in Prospect's managed health business, PHP Holdings, allocated as: (1) a minority equity interest valued at $75 million (the "Minority Interest Transaction"), and (2) a $646 million note convertible into additional equity at MPT's option. Br. 5-6.

Plaintiffs do not dispute that as a result of the "Fallback Provision," it made no difference whether the DMHC approved a conversion of the note into additional equity—MPT would be in

---

[1]    Internal quotation marks, citations, and alterations have been omitted. "FAC" refers to the First Amended Complaint (Dkt. 27), "Br." to Defendants' opening brief (Dkt. 30), and "Opp." to Plaintiffs' opposition (Dkt. 32). Citations to filed exhibits refer to the ECF page numbers.

the same economic position in either case.  FAC ¶ 13.  Plaintiffs nevertheless contend that the

DMHC's post-closing review of the Minority Interest Transaction was material and should have

been disclosed.  Plaintiffs are wrong as a matter of law.

> **A.    Plaintiffs abandon reliance on the May 23 statements.**

Plaintiffs do not respond to Defendants' arguments regarding the May 23 statements, *see*

Br. 11-13, and have therefore abandoned those claims.  *Sachsenberg* v. *IRSA Inversiones y*

*Representaciones Sociedad Anonima*, 339 F. Supp. 3d 169, 181 (S.D.N.Y. 2018).

> **B.    Plaintiffs fail to adequately allege that MPT's August 2023 statements were**
> **materially misleading.**

Plaintiffs now only contend that Defendants should have disclosed the DMHC review in

MPT's August 2023 earnings release and Form 10-Q.  Opp. 9-10.  Plaintiffs do not dispute,

however, that "the mere existence of a governmental inspection, unaccompanied by a clear

indication of an adverse business consequence, is not material information."  *In re Open Joint*

*Stock Co. Vimpel-Commc'ns, Sec. Litig.*, 2006 WL 647981, at *6 (S.D.N.Y. Mar. 14, 2006)

(discussing *Acito* v. *IMCERA Grp., Inc*., 47 F.3d 47 (2d Cir. 1995)).

Plaintiffs say that the DMHC review put "the issuance of equity" to MPT at "major risk."

Opp. 10.  It did not.  Plaintiffs do not dispute that the Minority Interest Transaction closed on May

23, and that MPT had thus already received its equity interests before the DMHC review even

began.  *See* Dkt. 28-1 at 7, § 3.2.  There was no indication, let alone a "clear indication," that the

DMHC would seek to unwind the already completed transaction, an action the agency has

apparently never taken in its history, and that it did not, in fact, take here.[2]  For good reason—the relevant statute governs only mergers, acquisitions, or other change of control transactions.  *See* California Health & Safety Code § 1399.65(a)(1); Br. 14.  Plaintiffs do not dispute that the Minority Interest Transaction was none of those things.  Instead, they mischaracterize the record, claiming that the DMHC found that the Transaction "did not comply with California law."  Opp. 10.  The DMHC did no such thing, noting only that Prospect's initial submission in June 2023 had yet to "demonstrate compliance," and therefore requesting additional information.  Dkt. 28-3 at 4.  After Prospect provided that information, the DMHC "approved" "the terms of the Notice," as MPT expected.  Dkt. 28-4 at 2.

Plaintiffs' reliance on *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) (Opp. 9) only confirms that MPT had no duty to disclose.  *Hi-Crush* involved a "major dispute" between Hi-Crush and a significant customer, Baker Hughes, that had "ripened" when Baker Hughes terminated a purchase agreement, making clear "[it] no longer intended to do business with Hi-Crush."  *Id*. at *13, 15.  As Judge Ramos explained in a later decision, *Hi-Crush* "does not hold that a party has an obligation to disclose all disputes with a major customer," but rather "involved a contract that was already terminated."  *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *13 (S.D.N.Y. Aug. 1, 2017).  By contrast, where, as here, "an outcome is merely speculative, the duty to disclose does not attach."  *Id.* at *11 (*citing Acito*, 47 F.3d at 53).

---

[2]    Plaintiffs cite nothing suggesting otherwise, urging instead that the Court ignore the DMHC's own precedents.  Opp. 12.  But the Court "may take routine judicial notice of documents retrieved from official government websites," *Vill. Green At Sayville, LLC* v. *Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022), and may "disregard allegations . . . that contradict or are inconsistent with judicially-noticed facts."  *Fasano* v. *Li*, 2023 WL 6292579, at *5 (S.D.N.Y. Sept. 27, 2023).

That is especially true here because the supposed "major risk" to the Minority Interest Transaction never materialized. In *Acito*, the Second Circuit held that defendants had no duty to disclose two prior failed FDA factory inspections, even though a third inspection ultimately resulted in significant adverse consequences. 47 F.3d at 52-53. Because those consequences were not a "foregone conclusion" at the time of the earlier inspections, however, there was no duty to disclose the earlier inspections. *Id*. at 53 ("defendants' lack of clairvoyance simply does not constitute securities fraud."). Here, the DMHC's review did not lead to *any* adverse consequences. Failing to disclose that it might have, even though it didn't, is not securities fraud.

In all events, Plaintiffs do not dispute that the Minority Interest Transaction implicated at most $75 million and was thus plainly immaterial to the broader relationship with Prospect (which involved $1.6 billion in assets) or to MPT's total assets of ***$19.2 billion***. Br. 15; Dkt. 31-5 at 23; *see ECA* v. *JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) (comparing investment to defendant's total assets); *accord IBEW* v. *Royal Bank of Scotland Grp.*, 783 F.3d 383, 391 (2d Cir. 2015).

Apparently recognizing MPT had no duty to disclose a negligible risk to a small investment, Plaintiffs now argue that the DMHC review might have "precluded MPT from exercising blocking rights." *See* Opp. 5, 12. That theory, however, is alleged nowhere in the FAC, which does not allege what the so-called blocking rights were, why they mattered to MPT, or why any investor would have cared whether they were supposedly at risk. Setting that aside, just as with the Minority Interest Transaction as a whole, the DMHC review never impacted the blocking

rights in any meaningful way.  MPT retained them, and simply assured the DMHC that it would not use them to affect Prospect's compliance with California law.[3]

Because there was no duty to disclose, SAB No. 99's quantitative and qualitative factors (Opp. 13-14) are irrelevant.  And regardless, the Minority Interest Transaction implicated less than 5% of MPT's total assets, and thus carries the "preliminary assumption" of immateriality.  *ECA*, 553 F.3d at 198.  None of Plaintiffs' qualitative factors—hinging on the unpled blocking rights theory—are "sufficiently strong" to overcome that assumption.  *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 423 (S.D.N.Y. 2013).  Nor can Plaintiffs bootstrap their way to materiality based on the market's reaction to the *WSJ* article (Opp. 17), especially given that the article contained other negative information and inaccurately described the DMHC's review.  *See Hutchison* v. *Deutsche Bank Sec., Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) (stock drop "too blunt an instrument" for materiality).

### C.    Plaintiffs fail to plead any GAAP violation.

Plaintiffs do not dispute that the Minority Interest Transaction closed on May 23, 2023, at which time MPT received ownership interests in PHP Holdings.  MPT's receipt of these interests was not "contingent" on anything other than the closing, and there was thus no "gain contingency" preventing MPT from recognizing a portion of the value of its receivables as revenue.  *See* ASC-450-10-20 ("gain contingency" is a "set of circumstances involving uncertainty as to *possible* gain") (emphasis added); *see also* ASC-450-30-25-1 (gain contingency is a "contingency that might result in a gain").  Indeed, under SAB No. 101, cited nowhere by Plaintiffs, revenue may be

---

[3]    The "blocking rights" included customary consent rights over "Major Decisions" such as sales of the company, changes to formation documents, equity or debt issuances, or changes to MPT's rights and preferences. Dkt. 33-1 at 77-75, 101.  None of these were restricted by the April 2024 Undertakings, which merely required PHP's subsidiary to maintain certain minimum capital thresholds in compliance with law.  FAC ¶ 168.

recognized when it is "realized or realizable," and is appropriate where: (1) "[p]ersuasive evidence of an arrangement exists"; (2) "[d]elivery has occurred or services have been rendered"; (3) "[t]he seller's price to the buyer is fixed or determinable"; and (4) "[c]ollectibility is reasonably assured." SEC Staff Acct. Bull. No. 101 (Dec. 3, 1999).  The Minority Interest Transaction satisfied all four factors as of May 23:  an executed agreement governed its terms, and delivery to MPT (in the form of the note and equity interest) had occurred at a determined price.  *See* Dkt. 28-1 at 7.

Plaintiffs' conclusory assertion that the DMHC review created a "risk" that the Minority Interest Transaction would be unwound (Opp. 17) does not change the analysis.  A "risk" to an already completed transaction is not a "contingency that might result in a gain."  ASC-450-30-25-1.  And the review created no meaningful risk in any event.  *See supra* Section I.B.

Moreover, MPT's accounting estimates are opinions subject to an even higher pleading standard that Plaintiffs do not meet.  *Omnicare, Inc.* v. *Laborers Dist. Council of Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).  Plaintiffs mischaracterize *New England Carpenters Guaranteed Annuity & Pension Funds* v. *DeCarlo*, 122 F.4th 28 (2d Cir. 2023), arguing that the court there determined that accounting statements are not opinions.  Opp. 15.  But *DeCarlo* expressly declined to rule on that question.  *See DeCarlo*, 122 F.4th at 46 ("we do not need to decide whether these financial statements are statements of fact or . . . opinion").  Instead, the court held that plaintiffs had adequately alleged that the accounting was not based on "meaningful inquiry," did not "fairly align with the information in the issuer's possession at the time," and thus had "no basis."  *Id*. at 46-47 (*quoting Omnicare*, 575 U.S. at 188-89).  That holding turned on (1) detailed allegations that the company's historical practices contradicted the accounting at issue, and (2) a significant restatement admitting the accounting was wrong.  *Id.*  Even then, the court *affirmed* dismissal of the Section 10(b) claims for lack of scienter.  *Id*. at 49-50.

Finally, of the $68 million gain recognized, only $7 million was attributable to the Minority Interest Transaction. *See* Br. 16. Even comparing that to MPT's Q2 revenue of $337.4 million, as Plaintiffs urge (Opp. 18), any purportedly improper accounting affected only 2% of MPT's quarterly revenue, and was thus immaterial.[4]

## II.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

### A.    Plaintiffs fail to adequately allege any motive to commit fraud.

Relying on *ECA*, Plaintiffs contend that Aldag and Hamner were motivated to commit fraud because their bonuses of $1 million and $422,000, respectively, were tied to MPT's financial performance. Opp. 20.[5] That argument is squarely foreclosed by *ECA* itself, which holds that "incentive compensation can hardly be the basis on which an allegation of fraud is predicated." *ECA*, 553 F.3d at 201 (*quoting Acito*, 47 F.3d at 54) (that defendants "received bonuses based on corporate earnings and higher stock prices" did not "strengthen the inference of fraudulent intent"). The Second Circuit reached that conclusion—and affirmed dismissal for lack of scienter—in a case involving alleged participation in the Enron scandal, one of the largest corporate frauds in history. *Id.* at 207.

Plaintiffs nevertheless pull a snippet of dicta from *ECA*, claiming they've pleaded a "direct link" between the bonuses and the purported misstatements based on the "magnitude of the compensation." Opp. 20 (*quoting ECA*, 553 F.3d at 201). That dicta, however, was distinguishing

---

[4]    Plaintiffs argue that the entire $68 million gain was at risk because it was all tied to "the receipt of equity in PHP." Opp. 18. But in the very same paragraph, Plaintiffs admit that "the $68 million gain resulted from an increase in the value of MPT's *total* PHP interest." *Id.* (emphasis added). That total interest included both the minority equity interest under DMHC review (valued at $68 million during Q2) *and* the convertible note (valued at $586 million during Q2). Br. 16. Accordingly, only 10.4% of MPT's total Q2 gain was attributable to the minority equity interest, *i.e.*, $7 million. *Id.*

[5]    Plaintiffs have abandoned their claim that Defendant Hanna acted with scienter.

a decades-old Eighth Circuit ruling—*Fla. State Bd. of Admin.* v. *Green Tree Fin. Corp.*, 270 F.3d 645 (8th Cir. 2001)—with allegations nothing like those here:  the CEO in *Green Tree* was the highest paid executive in America and received a *$102 million* bonus pursuant to an "unusual" compensation package tied to massively overstated earnings that were later restated.  *See id.* at 661-62.  Those allegations "are plainly inapposite here given the relative modesty and typicality of defendants' bonus compensation." *Reilly* v. *U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *13 (S.D.N.Y. July 23, 2018) (distinguishing *Green Tree* and applying *ECA* to find no scienter based on cash bonuses of $2 million).[6]

Applying *ECA*, courts thus routinely hold that cash bonuses that far exceed those alleged here are "insufficient evidence of motive."  *Id.*; *see also In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 527-28 (S.D.N.Y. 2020) ($3.9 million); *Lipow* v. *Net1 UEPS Technologies, Inc.*, 131 F. Supp. 3d 144, 153, 160-62 (S.D.N.Y. 2015) ($5.4 million); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 622 (S.D.N.Y. 2005) ($15 million).[7]

Moreover, Plaintiffs do not dispute that Aldag and Hamner's stock holdings dwarfed their cash bonuses, and do not dispute that neither sold shares before the alleged corrective disclosure. Opp. 21-22.  That is dispositive of a lack of scienter.  *See* Br. 19-20 (collecting cases).  Plaintiffs now speculate that the stock was "subject to vesting."  Opp. 22.  But even accounting for shares that had yet to vest as of March 29, 2023, Aldag and Hamner together still held *more than 4 million*

---

[6]    Plaintiffs do not even adequately plead that the alleged accounting violation was tied to any increase in bonus compensation.  *See* Br. 21.  Plaintiffs' response in opposition fails for the reasons discussed above.  *Supra* at n.4.

[7]    *San Antonio Fire & Police Pension Fund* v. *Dentsply Sirona Inc.*, 732 F. Supp. 3d 300 (S.D.N.Y. 2024) (Opp. 20) is not to the contrary—it involved more than $10 million in potential bonuses—still "insufficient to establish scienter" "on their own"—as well as a restatement, internal investigation, executive terminations, and defendants' actual knowledge of fraud.  *Id.* at 317-23.

*vested and liquid shares* valued at more than *$31 million*.  Dkt. 31-11 at 61-62, nn.2-3.  There is no coherent basis to infer that senior executives with more than 20 years at the company would risk everything to secure an extra $1 million bonus, while simultaneously doing nothing to take advantage of stock worth more than 30 times as much.

### B.     Plaintiffs fail to allege strong circumstantial evidence of fraud.

Having failed to allege any motive, "the circumstantial evidence of conscious misbehavior must be correspondingly greater."  *Arkansas Pub. Emps. Ret. Sys.* v. *Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022).  Plaintiffs must plead facts demonstrating "highly unreasonable behavior" evidencing "an extreme departure from the standards of ordinary care."  *Id.*  And they must do so with the particularity required of the PSLRA and Rule 9(b)—they must identify "*specific* contradictory information" that defendants had access to and "must specifically identify the reports or statements containing" such information.  *In re Citigroup Sec. Litig.*, 2023 WL 2632258, at *22 (S.D.N.Y. Mar. 24, 2023).  "Allegations of GAAP violations or accounting irregularities, standing alone, are insufficient."  *ECA*, 553 F.3d at 200.

Plaintiffs come nowhere close to meeting these standards.  They argue that "it is not credible that Aldag and Hamner were unaware of the DMHC's scrutiny" because Hamner signed the Restructuring Agreement and there is purportedly "no question" that he would have "informed" Aldag "about any regulatory developments."  Opp. 23-24.  Even accepting Plaintiffs' speculation concerning what Aldag and Hamner supposedly knew about the DMHC review, Plaintiffs plead no facts suggesting that either Aldag or Hamner knew or should have known the review posed any risk to the company at all, much less a "major risk" (Opp. 10) warranting disclosure.  *See Das* v. *Rio Tinto PLC*, 332 F. Supp. 3d 786, 814 (S.D.N.Y. 2018).  Nor do they plead any facts suggesting that either believed that MPT's accounting was improper.

None of the "red flags" typically accompanying an accounting fraud are present here: Plaintiffs identify no executive departures, no contrary internal reports from accounting or legal, no confidential witnesses, no questions raised by MPT's auditors, no subsequent accounting corrections, and no financial restatements. The absence of any of these particularized allegations requires dismissal, and stands in stark contrast to the allegations in Plaintiffs' own cited cases:

- *In re Lottery.com, Inc. Sec. Litig.*, 2025 WL 605485 (S.D.N.Y. Feb. 25, 2025) (Opp. 23-24) (restatement; withdrawal of auditor; DOJ and SEC investigations; executive terminations, including CFO who negotiated "sham" transaction);

- *Dentsply*, 732 F. Supp. 3d 300 (Opp. 24) (internal investigation; poor internal controls; executive terminations and resignations; restatement);

- *Sjunde AP-Fonden* v. *Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120 (S.D.N.Y. 2021) (Opp. 24) (confidential witness; "highly unusual" and "no-bid" contract for 200 times normal fees; individual flagged by legal for ethics reasons);

- *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600 (S.D.N.Y. May 24, 2018) (Opp. 19) (multiple confidential witnesses and contradictory internal reports);

- *Gauquie* v. *Albany Molecular Rsch., Inc.*, 2016 WL 4007591 (E.D.N.Y. July 26, 2016) (Opp. 23) (confidential witness contradicted defendants' public statements).

Dismissal is all the more warranted because MPT never restated its financials and PwC certified that MPT's accounting treatment complied with GAAP, which "defeats plaintiffs' claims of recklessness." *In re JP Morgan Chase Sec. Litig.*, 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007), *aff'd*, 553 F.3d 187 (2d Cir. 2009); *accord Woolgar* v. *Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 228-29 (S.D.N.Y. 2020) (no scienter where non-party auditor did not find inconsistencies); *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173 (2d Cir. 2014) (same); *Lighthouse Fin. Grp.* v. *Royal Bank of Scotland Grp., PLC*, 2013 WL 4405538, at *8 (S.D.N.Y. Aug. 5, 2013) (same).

Plaintiffs' "core operations" allegations cannot establish scienter either, as Prospect constituted only 7.5% of MPT's total assets.  FAC ¶ 5; *see Das*, 332 F. Supp. 3d at 816 ("doctrine typically applies only where the operation in question constitutes nearly all of a company's business").

Considered holistically, the FAC's allegations do not raise any "cogent" or "compelling" theory of fraud.  *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).  The far more compelling inference is that Defendants reasonably believed that the DMHC posed negligible risk to a small transaction, as subsequent events confirmed.

## III.      PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

The *WSJ* article was not a corrective disclosure because it included other negative information and mischaracterized the restructuring.  Br. 24.  It "cannot be the basis for loss causation."  *Fila* v. *Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 497 (S.D.N.Y. 2016); *see also In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) ("[I]f markets react negatively to a characterization [of a transaction], the loss is caused by the subsequent characterization, not by the transaction itself.").

Plaintiffs contend that *Omnicom* was decided on summary judgment (Opp. 28), but ignore *Cent. States, Se. & Sw. Areas Pension Fund* v. *Fed. Home Loan Mortgage Corp.*, 543 F. App'x 72 (2d Cir. 2013) (summary order), which applied *Omnicom* to affirm dismissal on the pleadings. *Id*. at 75; *see also Janbay* v. *Canadian Solar, Inc.*, 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012).

## CONCLUSION

The FAC should be dismissed with prejudice.

Dated: May 1, 2025

WACHTELL, LIPTON, ROSEN & KATZ

/s/ Nathaniel Cullerton
William Savitt
Sarah K. Eddy
Nathaniel Cullerton
Adabelle U. Ekechukwu
51 West 52nd Street
New York, NY  10019
Tel.: (212) 403-1000

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(C)**

Pursuant to Local Civil Rule 7.1(c) of United States District Court for the Southern District of New York, I hereby certify that the foregoing Reply Memorandum of Law, filed on May 1, 2025, contains 3,499 words and does not exceed Rule 7.1(c)'s 3,500 word-count limitation.

/s/ Nathaniel Cullerton
Counsel

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will give notice of such filing to all counsel of record.

/s/ Nathaniel Cullerton
Counsel